IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSIE M. WRIGHT,                     )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )    CASE NO. 2:26-cv-476-RAH-JTA
                                     )
STEVEN CLAYTON                       )
THOMASON,                            )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosie M. Wright originally brought this action against Defendant Steven Clayton Thomason in the Circuit Court of Montgomery County, Alabama, asserting state-law breach-of-contract and misrepresentation claims. On June 15, 2026, Thomason removed the case to this Court, asserting that both federal question and diversity jurisdiction were present. On June 16, 2026, the Court directed Thomason to show cause why the case should not be remanded for lack of subject matter jurisdiction. (*See* Doc. 3); *see also Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). Thomason filed his Response on June 30, 2026. (*See* Doc. 7.) After careful review, and for the reasons below, the Court finds that this case is due to be remanded based on a lack of subject matter jurisdiction.

As explained in its prior Order (Doc. 3), this Court determines whether it has subject matter jurisdiction—whether it be federal question or diversity jurisdiction—based on the circumstances that existed at the time the notice of removal was filed. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) (citation omitted)

("The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal."); *Grupo Dataflux v. Atlas Glob. Grp. L.P.*, 541 U.S. 567, 571 (2004) ("[S]ubject matter jurisdiction in diversity cases depends on the state of facts that existed at the time of filing."); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."); *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted) ("[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'"). Importantly, a federal cause of action contained in a defense or counterclaim is not a basis for removal jurisdiction. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009). And the burden of proving that removal is appropriate belongs to the party seeking removal. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998). If there is any doubt as to whether removal is appropriate, those doubts are to be resolved in favor of remanding the case to state court. *Univ. of S. Ala.*, 168 F.3d at 411.

Looking to the Complaint at the time of removal, Thomason concedes in his Notice of Removal that both he and Wright are residents of Alabama. (Doc. 1 at 3.) While citizenship, not residency, is the relevant consideration for diversity jurisdiction, the Court will assume that Thomason intended to allege that both parties are citizens of Alabama. If taken as true, and regardless of the citizenship or involvement of State Farm in the case, diversity jurisdiction is precluded as a matter of law. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different state from *each* plaintiff."); 28 U.S.C. § 1332(a)(1). And as the Court

2

explained in its prior Order (Doc. 3 at 3), to the extent State Farm may later become a party to the case, that fact is irrelevant to this Court's removal jurisdiction because jurisdiction is measured at the time of removal. Because there is no diversity jurisdiction here, the question becomes whether the well-pleaded complaint, at the time of removal, contained a federal cause of action on its face.

Again looking to the face of Plaintiff's Complaint, at the time of removal, only two causes of action are asserted. The first is a state-law breach-of-contract claim, and the second is a state-law misrepresentation claim. Neither implicates federal law. *See City of Walla Walla v. Walla Walla Water Co.*, 172 U.S. 1, 8 (1898) ("[A]n ordinary breach of contract by a private party . . . does not arise under the constitution and laws of the United States, and the court has no jurisdiction, unless there be the requisite diversity of citizenship."); *see also Com. Dining Servs., Inc. v. U.S. Env't Servs.*, No. 05-0556-CG-C, 2006 WL 1181813, at *2 (S.D. Ala. May 2, 2006) (finding that fraudulent misrepresentation cause of action did not implicate federal law and therefore conferred no federal subject matter jurisdiction); *Sanders v. Cruz*, No. 5:23-cv-103-MMH-PRL, 2023 WL 2435355, at *1 (M.D. Fla. Feb. 21, 2023) (finding no federal question jurisdiction where the plaintiff asserted "a variety of claims—i.e., breach of contract, fraud, misrepresentation, and unjust enrichment—all of which arise under state law"). Accordingly, no question of federal law is apparent on the face of Plaintiff's Complaint, nor has one been identified in Thomason's subsequent filings.

In his Response to the Court's show cause order, Thomason argues that 28 U.S.C. § 1443(1), a narrow exception to the well-pleaded complaint rule, grants him the right to remove this case to federal court and confers jurisdiction upon this Court. (*See* Doc. 7 at 1.) Section 1443 allows removal of actions "against any person who is denied or cannot enforce in the courts of such state a right under any law providing

3

for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1). Proper removal under § 1443 is governed by a two-part test: (1) whether the defendant can show that "the right upon which he relies arises under a federal law providing for specific civil rights stated in terms of racial equality[,]" *Wells Fargo Bank, N.A. v. Henley*, 198 F. App'x 829, 830 (11th Cir. 2006), and (2) whether the defendant can "show that he has been denied or cannot enforce that right in the state courts[,]" *Cent. Mortg. Co. v. Laskos*, 561 F. App'x 827, 829 (11th Cir. 2014).

Thomason argues, with respect to prong one, that the right he relies upon here is contained in 42 U.S.C. § 1981, which guarantees

> that all persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Though most statutes fall outside the realm of § 1443, "the United States Supreme Court recognized that § 1981 qualifies under § 1443(1) as a law providing specific civil rights stated in terms of racial equality." *Alabama v. Conley*, 245 F.3d 1292, 1296 (11th Cir. 2001) (citing *City of Greenwood v. Peacock*, 384 U.S. 808, 825 (1966)).

To satisfy the second part of the § 1443(1) removal test, i.e., that the defendant's rights were denied in state court, or cannot be enforced in state court, "[g]enerally, the denial . . . must be 'manifest in a formal expression of state law.'" *Conley*, 245 F.3d at 1296 (quoting *Georgia v. Rachel*, 384 U.S. 780, 803 (1966)). "This requirement ensures that removal is available only in cases where the denial of the right can be clearly predicted . . . ." *Id.* (quoting *Rachel*, 384 U.S. at 803–04). "However, under a narrow exception recognized by the Supreme Court in *Rachel*,

4

even where the action is premised upon a facially neutral state law, if the very act of bringing the state court proceedings will constitute a denial of the rights conferred by the federal statute, § 1443(1) removal is proper." *Id.* (quoting *Rachel*, 384 U.S. at 804–05).[1] Here, Thomason does not argue that there is a manifest formal expression of state law that conflicts with his statutory rights. Rather, he argues that the narrow exception to § 1443 removal applies, i.e., that the mere initiation of the state court proceedings constitutes the denial of his rights under 42 U.S.C. § 1981. (*See* Doc. 7 at 4.) In support, Thomason references the Assignment of Benefits ("AOB") Agreement and argues that the rights contained therein "may be enforced in federal court under 42 U.S.C. § 1981 . . . ." (Doc. 1-2 at 3.)

At the outset, it should be noted that private parties cannot create federal subject matter jurisdiction through consent in a contractual agreement. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986). Regardless, the assertion that a contract may—or, in other words, *might*—ultimately be enforced in a federal forum in no way guarantees that a federal forum will hear and decide the case. Indeed, the AOB Agreement attached to the Notice of Removal states that "[t]his agreement shall be governed by the laws of the State of Alabama, with federal jurisdiction *available where applicable*[.]" (Doc. 1-2 at 3) (emphasis added). More importantly, however, Thomason's Notice of Removal and Response are devoid of any explanation as to how the state court is unable to protect the rights guaranteed to him under § 1981. *See Conley*, 245 F.3d at 1297–98 (quoting *Peacock*, 384 U.S. at 827–28).[2] In stark contrast to the circumstances in *Rachel*, Thomason would have

---

[1] *See, e.g., Rachel*, 384 U.S. at 785 (finding that the very act of bringing the proceedings constituted a denial of the defendants' statutory rights, despite the statute being facially neutral, when peaceful protestors were prosecuted for criminal trespass under Georgia's criminal code in violation of the Civil Rights Act of 1964).

[2] The Court in *Peacock* stated that:

this Court entertain a theory that, simply by being sued for breach of contract and misrepresentation, his rights to racial equality under § 1981 have been implicated in such a way that the state court cannot preserve or protect them. Yet Thomason fails to even suggest how the state court will diminish his ability to enforce the contract at issue, initiate a countersuit, or submit evidence in support of his position, or how that court will place him, as a matter of law, in a position inferior to that of a white citizen, as § 1443(1) requires. *See* 28 U.S.C. § 1443(1). Accordingly, Thomason's arguments for § 1443 removal fall far short of the requisite "rare situation[,]" *Peacock*, 384 U.S. at 827–28, where "relative clarity" or "firm prediction" confirm that he "would be 'denied or cannot enforce' the specified federal rights in the state court[,]" *Rachel*, 384 U.S. at 803–04. *See also Conley*, 245 F.3d at 1298. To the extent that Thomason argues that the state court complaint is a nullity based on the unauthorized practice of law and that the Plaintiff lacks standing, those are not grounds that confer subject matter jurisdiction upon this Court, and Thomason makes no suggestion that state court processes are inadequate to address these arguments. *See* 28 U.S.C. § 1443(1).

Thomason next argues that the breach-of-contract and misrepresentation claims are completely preempted by federal law. (*See* Doc. 7 at 9–10.) "Preemption may be either express or implied, and is compelled whether Congress'[] command

---

The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be "denied or cannot enforce in the courts" of the State any right under a federal law providing for equal civil rights. The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court.

*Peacock*, 384 U.S. at 827–28.

is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1343 (11th Cir. 2005) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992)). However, Congress' intent to preempt state law must be "clear and manifest." *Teper v. Miller*, 82 F.3d 989, 993 (11th Cir. 1996). Removal on the basis of federal preemption is proper when Congress "preempts an area of law so completely that any complaint raising claims in that area is necessarily federal in character." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998).

As his basis for federal preemption of the causes of action in Plaintiff's Complaint, Thomason cites § 1981 and ERISA. Having already addressed the former, the Court turns to ERISA, which is codified at 29 U.S.C. § 1001, *et seq.* While it is true that ERISA does preempt an area of state law, it was "intended to completely preempt state law claims involving rights to recover benefits under employee benefits plans." *Nix v. United Health Care of Ala., Inc.*, 179 F. Supp. 2d 1363, 1365 (M.D. Ala. 2001) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–66 (1987)). The underlying dispute in this case concerns a residential construction contract, the oral representations made in connection with that alleged agreement, and Thomason's alleged non-performance and deficient performance under that contract. (Doc. 1 at 7–11.) Thomason claims that "[t]o the extent the AOB Agreement involves insurance benefits, employee benefit plans, or other federally regulated instruments, the applicable federal regulatory scheme—including, where applicable, ERISA or other federal statutes governing assignment of benefits—may completely preempt Plaintiff's state law claims." (Doc. 7 at 10.) First, the AOB Agreement does not reference employee benefit plans. Second, the AOB Agreement's cursory reference to insurance benefits does not alter the nature of this dispute so as to bring it within ERISA's scope. And ERISA's preemptive force certainly does not extend from state laws governing employee benefit plans to the

States' ability to enact and enforce their own contract law. Complete preemption therefore supplies no basis for federal jurisdiction here.

Finally, Thomason argues that the Declaratory Judgment Act ("DJA") supports his effort to have this cause heard in federal court. But as Thomason concedes in his Notice of Removal, the DJA does not provide an independent basis for jurisdiction either; that is, it is not a stand-alone cause of action. *See Alonso-Escobar v. USCIS Field Off. Dir., Miami, Fla.*, 462 F. App'x 933, 935 (11th Cir. 2012) ("the DJA [does not] serve[] as an independent source of district court jurisdiction"); *Gupta v. U.S. Att'y Gen.*, 439 F. App'x 858 (11th Cir. 2011) (holding that the DJA did not provide independent basis of jurisdiction). As the Eleventh Circuit has stated, "a suit brought under the [DJA] must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020) (citing *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989)). Here, because no other basis for subject matter jurisdiction is present, the case is due to be remanded.

Accordingly, and for good cause, it is **ORDERED** as follows:

1. This Court lacks subject matter jurisdiction over this action;

2. This action is *sua sponte* **REMANDED** to the Circuit Court of Montgomery County, Alabama;

3. The Clerk of Court is **DIRECTED** to take the necessary steps to effectuate the remand; and,

4. The Clerk of Court **SHALL** terminate and close this case.

**DONE** on this the 13th day of July 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE